UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00615-RSE

**LEE M.**                                                                                                    **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
*Commissioner of Social Security*[1]                                            **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Claimant Lee M.'s ("Claimant's") applications for disability insurance benefits and supplemental security income benefits. Claimant presently seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). Both Claimant (DN 12; DN 13) and the Commissioner (DN 16) have filed a Fact and Law Summary. Claimant filed a reply (DN 16). The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 10).

### I. Background

Lee M. ("Claimant") applied for disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act on October 12, 2021. (Transcript, hereinafter ("Tr."), 301-315). The application alleged Claimant's disability began on April 13, 2020 (Tr. 302, 311) due to "COPD, Depression, Knee

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. He is automatically substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d).

Problem, Hand/Wrist/Arm Problem, Back Problem, and Feet Problem" (Tr. 353). Claimant's applications were denied at the initial and reconsideration levels. (Tr. 165-173; 176-183).

At Claimant's request, Administrative Law Judge Jonathon Shoenholz ("ALJ Shoenholz") conducted a hearing in Columbia, South Carolina on September 27, 2023. (Tr. 51). Claimant and her counsel appeared by videoconference.[2] (Tr. 53). An impartial vocational expert also participated in the hearing. (*Id.*).

Claimant provided the following testimony. She has her GED and previously worked in fast food, as a restaurant hostess, and as a manager at a convenience store. (Tr. 57-59). She was working in housekeeping for Crestline Hotels and Resorts until she was let go in August of 2023. (Tr. 63-64). According to Claimant, she stopped working at Crestline because her supervisors thought she took too many breaks. At least four times during each shift she would get hot, sweaty, and have trouble breathing, which required her to take a twenty-to-thirty-minute break to cool down in the bathroom area. (Tr. 67-68, 72-73). She admitted to being late for work and leaving work early because she has a hard time getting motivated. (Tr. 73-74).

Claimant broke her forearm in December of 2019 and wore a cast for several months. (Tr. 81). After having the cast removed, her wrist was shattered, and she had surgery. (Tr. 81-82). She says X-rays show her thumb "is barely hanging on." (Tr. 82). She still has pain in her left wrist every time she uses her hand and cannot carry or hold anything in that hand. (Tr. 83). Claimant also experiences "horrible" nerve pain "all the time" in her thumb. (Tr. 84-85). During the hearing, ALJ Shoenholz observed Claimant using and moving her phone in her left hand. (Tr. 92). Claimant clarified her hand was not "inoperable." (*Id.*).

---

[2] Claimant indicated her consent to the hearing being conducted by Zoom. (Tr. 54-55).

Because of her COPD, Claimant uses a breathing machine three times a day for ten minutes each time. She does not think using the machine is helpful because she still has symptoms. (Tr. 86). It is difficult for her to climb a flight of stairs without taking a break. (*Id.*). If she doesn't take a break, her lungs are on fire. (Tr. 86-87). She estimates she could stand and walk two and a half to three and a half hours during an eight-hour workday. (Tr. 87-88).

As for her mental health, Claimant reports she is not happy with how her life has turned out and does not want to get out of bed or do anything. (Tr. 75). She says she cannot concentrate or focus and that negativity overtakes her. (Tr. 76). She isolates at home and has little social interaction because she hates being around people and finds them "terrible." (Tr. 77-78). Though she wishes she had someone to talk to, she worries that if she makes calls about treatment, she will be put in a hospital or institution. (Tr. 79-80). Embarrassment from her physical impairments leads her to have panic attacks. (Tr. 87).

ALJ Shoenholz issued an unfavorable decision on November 15, 2023. (Tr. 36-45). He applied the Commissioner's five-step evaluation process for determining whether a claimant is disabled, 20 C.F.R. § 404.1520, and found as follows. First, Claimant engaged in substantial gainful activity during the following periods: around July 7, 2020 through sometime near the end of August 2023, but there has been a continuous 12-month period during which Claimant did not engage in substantial gainful activity. (Tr. 38-39). Second, Claimant has the following severe impairments: left hand osteoarthritis; status-post left distal radial screw and plate fixation; degenerative joint disease in the right knee; lumbar degenerative disc disease and scoliosis; and chronic obstructive pulmonary disease. (Tr. 39-40). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 40). At the fourth step, ALJ Shoenholz determined

Claimant has the residual functional capacity (RFC) to perform "light work[,]" with the following limitations:

> [she is able] to lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours; stand and/or walk for six hours; however, she is limited to frequently operating hand controls with the left hand; frequently reaching overhead, handling, and fingering with the left upper extremity; frequently climbing ramps and stairs, balancing, stooping, kneeling, and crouching; occasionally crawling and climbing ladders, ropes, or scaffolds; tolerating occasional exposure to unprotected heights; occasional exposure to dusts, odors, fumes, pulmonary irritants, and areas of poor ventilation; and tolerating frequent exposure to moving mechanical parts, humidity, and wetness.

(Tr. 41-44). Additionally at step four, ALJ Shoenholz found that Claimant can perform her past relevant work as a hostess because this work does not require the performance of work-related activities precluded by Claimant's RFC. (Tr. 45). Because of his Step Four findings, ALJ Shoenholz did not proceed to Step Five of the sequential evaluation process.

ALJ Shoenholz concluded Claimant was not under a disability, as defined in the Social Security Act, from April 13, 2020, through the date of the decision. (*Id.*). Claimant appealed ALJ Shoenholz's decision. (Tr. 298-99). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Shoenholz's decision. (Tr. 19-22). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner

bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Analysis

Claimant submits two claims of error, both stemming from ALJ Shoenholz's RFC determination. (DN 13, at PageID # 586). First, Claimant asserts ALJ Shoenholz improperly "played doctor" by using his lay opinions and rejecting medical opinions to create the RFC. Second, Claimant argues ALJ Shoenholz improperly evaluated the medical opinions of the state agency physicians. Claimant specifically argues ALJ Shoenholz failed to incorporate limitations from the state agency physicians' opinions that he found persuasive.

A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

### A. Did ALJ Shoenholz impermissibly "play doctor" in analyzing the State Agency Consultants' opinions when forming Claimant's RFC?

ALJ Shoenholz determined the opinions of the State agency consultants were "essentially persuasive." (Tr. 43). He discussed their conclusions that Claimant was limited to "light exertion with various postural limitations, frequent reaching overhead bilaterally, frequent fine and gross manipulation with the left hand, and avoiding concentrated exposure to pulmonary irritants, vibrations, and hazards." (*Id.*). Though stating that the SA consultants' opinions were supported by their citation to medical evidence at the time of their review, ALJ Shoenholz additionally noted "[t]heir opinions were somewhat inconsistent with other medical evidence." (*Id.*). He then referenced, for example, how the SA consultants opined limitations for neck pain but "claimant has not received any treatment for neck or shoulder pain, and no imaging studies have confirmed degenerative changes in these areas." (*Id.*). Because only a single exam in the last three years confirmed limited shoulder motion, ALJ Shoenholz rejected the SA consultants' right-side reaching limitation. (*Id.*). ALJ Shoenholz concluded his analysis of the SA consultants' opinions by finding the record warranted "somewhat greater postural restriction based upon imaging studies confirming degenerative changes in the knee and back, as cited above." (*Id.*).

Claimant takes issue with ALJ Shoenholz finding the opinions of the SA consultants to be "essentially persuasive," but then determining the record warranted greater restrictions based on "imaging studies confirming degenerative changes in the knee and back." (DN 13, at PageID # 591 (citing Tr. 43)). ALJ Shoenholz should have articulated how greater restrictions were warranted, according to Claimant. (*Id.*). ALJ Shoenholz's failure to do so, Claimant alleges, resulted in substitution of his lay opinion for that of a qualified medical professional or, in other words, ALJ Shoenholz "playing doctor." (*Id.*). Claimant relies on *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) to assert that ALJ Shoenholz should have sought a medical opinion interpreting the "imaging studies" and providing explanation as to the maximum restrictions based on those studies. (*Id.* at PageID # 593).

The Commissioner disagrees with Claimant's broad assertion that an ALJ's RFC cannot be supported by substantial evidence absent a medical opinion. (DN 15, at PageID # 611). Claimant's heavy reliance on *Deskin*, the Commissioner explains, is misplaced because in *Deskin*, there was only diagnostic evidence and no opinion from a medical source. (*Id.*). The Commissioner instead points to Sixth Circuit case law supporting that an ALJ's RFC finding need not correspond to a particular physician's opinion. (*Id.* at PageID # 612). The Commissioner also counters that ALJ Shoenholz did not base his RFC on a lay assessment because the imaging referenced had been interpreted by Dr. Katsaros and ALJ Shoenholz summarized those findings. (*Id.* at PageID # 613).

Relevant here is ALJ Shoenholz's determination that the record warranted "somewhat greater postural restriction based upon imaging studies confirming degenerative changes in the knee and back, as cited above." (Tr. 43). Based on this conclusion, ALJ Shoenholz amended the SA consultants' determination that Claimant could frequently crawl and climb ramps/stairs/ladders/ropes/scaffolds to occasional performance of such activities in the RFC. (*Cf.*

Tr. 41, *with* Tr. 131, 140, 148, 155). Earlier in the RFC analysis, ALJ Shoenholz discussed the "imaging studies" on which he based this determination. (Tr. 42). He specifically noted how imaging of Claimant's back in 2022 "confirmed some leftward scoliosis with chronic degenerative changes at with [sic] loss of disc height at L1-L3." (Tr. 42 (citing Ex 6F)). He also noted imaging of Claimant's knees in 2022, which were "normal[,]" and in 2023, which "confirmed degenerative changes in the right knee most significant in the medial and patellofemoral compartments." (*Id.* (citing Ex. 9F)).

ALJ Shoenholz's recounting of the results from this diagnostic imaging were not lay opinions as Claimant alleges. Rather, ALJ Shoenholz parroted Dr. Gianna Katsaros' review of this imaging during her consultative examination:

> 2 view **Lumbar spine** x-ray personally reviewed. AP view shows slight leftward scoliosis of the lumbar spine. No osteophytes. Lateral view shows loss of vertebral body height at L2. No acute fractures. No spondylolisthesis noted. Noted chronic degenerative changes with loss of disc height at L1/L2, L2/L3. No obvious bony abnormalities or fractures.

(Tr. 488).

And ALJ Shoenholz took his summary of Claimant's knee x-ray in 2023 from Dr. Anne Fitzpatrick's review of the imaging:

> There are some degenerative changes, probably most significant within the medial and patellofemoral compartments. There is some fullness within the suprapatellar pouch, which may reflect small effusion, and there is soft tissue swelling seen overlying the patella and anterior tibia.

(Tr. 512). Because ALJ Shoenholz relied on other physicians' interpretations of the diagnostic imaging from the record, he did not "play doctor" or evaluate raw medical data. Most critically, as the Commissioner points out, ALJ Shoenholz could not have improperly evaluated raw medical data because the diagnostic imaging itself is not part of the record.

8

Nor did ALJ Shoenholz err by failing to seek a separate medical opinion interpreting the imaging studies in the record on which he based greater limitations than those offered by the State agency physicians. The Claimant's reliance on *Deskin* is inapplicable here. In *Deskin*, the Northern District of Ohio determined that "where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated non-examining agency opinion) to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008). However, *Deskin* has been criticized in dozens of cases, including by this Court, as contradictory of both statutory law and Sixth Circuit case law. *See Ashley B. v. Comm'r of Soc. Sec.*, No. 1:23-cv-690, 2025 WL 957561, at *3 (S.D. Ohio Mar. 31, 2025). Moreover, the Sixth Circuit has rejected the argument that an ALJ must receive a medical opinion before determining a Claimant's RFC. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("to require the ALJ to base her RFC findings on a physician's opinion 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'").

ALJ Shoenholz did not rely solely on diagnostic evidence in his RFC analysis. Rather, ALJ Shoenholz reviewed the SA consultants' opinions, found them mostly persuasive, and then adopted several greater postural restrictions based on other evidence in the record, including other physicians' interpretation of diagnostic imaging. ALJ Shoenholz additionally reviewed the

consultative examiner's opinion. Because several physicians opined as to Claimant's functional limitations and ALJ Shoenholz evaluated such opinions, even if *Deskin* remained sound law, its principles would not be applicable here.

Even if Claimant could prove error, she was unharmed because the error she alleges resulted in ALJ Shoenholz adding postural restrictions beyond what the SA physicians opined. Numerous cases within this Circuit have noted that claimants are not prejudiced when the ALJ adopts a more restrictive RFC than an expert recommended. *See, e.g., Jada H. v. Kijakazi*, No. 3:22-CV-00520-CRS, 2023 WL 10325777, at *7 (W.D. Ky. Nov. 28, 2023) (finding any error in evaluating State Agency physicians' opinions was harmless because ALJ "ultimately crafted an RFC more restrictive than what the State Agency physicians opined . . ."); *Roberts v. Comm'r of Soc. Sec.*, No. 3:22-CV-00051-CEH, 2023 WL 4243225, at *17 (N.D. Ohio Jan. 23, 2023) (collecting cases); *Holland v. Comm'r of Soc. Sec.*, No. 2:21-cv-10364, 2022 WL 3702919, at *8 (E.D. Mich. Aug. 10, 2022) (quoting *Mosed v. Comm'r of Soc. Sec.*, No. 2:14-cv-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016), report and recommendation adopted by 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016) ("Plaintiff's argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State agency consultants is curious and unavailing."). Claimant has not demonstrated that ALJ Shoenholz's inclusion of more restrictive postural limitations prejudiced the determination.

For these reasons, the Court does not find ALJ Shoenholz impermissibly played doctor or that any reversible error stems from his evaluation of the SA consultants' opinions.

B. Did ALJ Shoenholz Fail to Properly Evaluate Dr. Katsaros' Consultative Opinion?[3]

---

[3] Claimant's heading for this claim in her brief stated that the Commissioner erred by improperly evaluating the medical opinions of the State agency consultants. (DN 13, at PageID # 581, 586, 594). However, review of Claimant's argument reveals she is challenging ALJ Shoenholz's evaluation of consultative examiner Dr. Katsaros' medical opinion. (*See id.* at PageID # 596-99).

10

Dr. Katsaros performed a consultative examination of Claimant on April 13, 2022. Following the examination, Dr. Katsaros determined that Claimant should be able to sit, stand for 10 minutes, walk for 5 minutes on a flat surface, and lift and carry objects weighing approximately 5 pounds for 5 feet without difficulty with her right upper extremity but could not do so with her left hand independently. (Tr. 489). Dr. Katsaros further found Claimant was capable of handling objects in both hands with good fine motor coordination, that she can fasten buttons and use zippers, but struggles with pincher grasp with her left hand and rotational movements with her left wrist. (*Id.*).

ALJ Shoenholz found Dr. Katsaros' consultative opinion was "somewhat persuasive." (Tr. 44). He indicated that certain parts of Dr. Katsaros' opinion were not persuasive because they were not supported by her examination of Claimant and were not consistent with the record. (*Id.*). ALJ Shoenholz then identified, for example, that if Dr. Katsaros' limitation that Claimant could lift and carry objects weighing approximately 5 pounds for 5 feet without difficulty was the most she could do, then the limitation was not persuasive as it was unsupported by exam findings of full motor strength, normal gait, normal posture, and no difficulties standing or walking. (*Id.*). Nor was such a restriction consistent with Claimant's reported daily activities, including her performance of work exceeding this limitation just two months after the examination, ALJ Shoenholz explained. (*Id.*). For similar reasons, ALJ Shoenholz discounted Dr. Katsaros' statement that Claimant could stand for 10 minutes as a functional limitation. (*Id.*). And although ALJ Shoenholz also found Dr. Katsaros' determination that Claimant could not lift or carry 5 pounds with her left hand to be unpersuasive based on her range of motion in the left arm being close to normal, left arm grip strength of 4/5, and left upper extremity strength of 5/5, he also noted some support existed for limitations based on Dr. Katsaros' examinations findings of difficulties with left hand pincher grip

and left wrist rotational movements. (*Id.*). ALJ Shoenholz concluded that Dr. Katsaros' opinion was "generally inconsistent with the overall medical evidence," which reflected conservative treatment, largely normal motor function, and Claimant's return to substantial gainful work in June of 2022. (*Id.*). Some of Dr. Katsaros' exertional limitations were warranted, according to ALJ Shoenholz, "but not to the extent that Dr. Katsaros opines." (*Id.*).

Claimant argues ALJ Shoenholz erred by failing to account for Dr. Katsaros' limitation that she could walk for 5 minutes on a flat surface. (DN 13, at PageID # 597). ALJ Shoenholz's failure to include Dr. Katsaros' walking limitation in his list of "certain parts" of the opinion that were not persuasive, in Claimant's opinion, demonstrates that ALJ Shoenholz found such limitation to be persuasive. (DN 16, at PageID # 619-20). To Claimant, ALJ Shoenholz's subsequent failure to include this persuasive limitation in the RFC or to explain grounds for such exclusion, results in an RFC that is not supported by substantial evidence. (DN 13, at PageID # 597-98; DN 16, at PageID # 619-20). Claimant cites to at least a dozen unpublished cases to argue "that the ALJ's RFC determination is not supported by substantial evidence when he grants significant weight to a medical opinion concerning the claimant's limitations, but then fails, without explanation, to incorporate these limitations into the claimant's [] RFC." (*Id.* at PageID # 594-95 (collecting cases)).

The Commissioner submits that Claimant's argument fails to recognize that ALJ Shoenholz found Dr. Katsaros' opinion to be *somewhat* persuasive, not *wholly* persuasive. (DN 15, at PageID # 614-15). Since ALJ Shoenholz found the opinion only somewhat persuasive, the Commissioner disagrees with Claimant's position that ALJ Shoenholz' failure to mention Dr. Katsaros' walking restriction rendered it persuasive. According to the Commissioner, an ALJ is not required to cite to every piece of evidence or conclusion from a medical opinion in their

12

evaluation. (*Id.* at PageID # 615 (citing *Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. Nov. 22, 2022) (citing 20 C.F.R. § 404.1520c(b)(1))). Since ALJ Shoenholz sufficiently articulated his reasoning for finding Dr. Katsaros' opinion only somewhat persuasive, by stating that certain parts of the opinion were neither supported by Dr. Katsaros' exam nor were consistent with the record, the Commissioner argues no further analysis was required. (*Id.*).

It is well established that an ALJ is not required to adopt a physician's opinion verbatim or to adopt opined limitations wholesale, even when the ALJ finds an opinion persuasive. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *Chermagne W. v. Comm'r of Soc. Sec.*, No. 3:24-cv-112, 2025 WL 1993507, at *5 (S.D. Ohio July 17, 2025) (finding ALJ was not required to "discuss every turn of phrase when formulating the RFC" where substantial evidence existed to support the ALJ's analysis that physician's opinion was only somewhat persuasive.). As Claimant identified, however, many district courts have determined that when an ALJ finds an opinion to be "somewhat persuasive" and indicates they have adopted limitations from an opinion, the ALJ must incorporate the opined limitations or provide an explanation for declining to do so. *See Michelle B. v. Comm'r of Soc. Sec.*, No. 2:23-cv-4222, 2025 WL 296321, at *5 (S.D. Ohio Jan. 24, 2025) (collecting cases).

First, Dr. Katsaros' statement that Claimant "should be able to walk for 5 minutes on flat surface" is not a clear functional limitation. As ALJ Shoenholz noted regarding Dr. Katsaros' opined limitations as to lifting, carrying, and standing, Dr. Katsaros did not identify whether the limitation was couched in terms of the least plaintiff could do or the most plaintiff can do. A

13

claimant's RFC must be couched in terms of "the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1).

Even assuming Dr. Katsaros' finding that Claimant should be able to walk 5 minutes on a flat surface was an appropriate functional limitation, no error results from ALJ Shoenholz not explicitly discussing such limitation. ALJ Shoenholz's silence on Dr. Katsaros' opinion that Claimant could walk 5 minutes on a flat surface does not equate to a finding that such a limitation is persuasive. The ALJ's full evaluation of the opinion allows the Court to trace his path of reasoning. As to Dr. Katsaros' standing and lifting/carrying restrictions, ALJ Shoenholz determined such restrictions were not persuasive because they were "unsupported by her exam findings of full motor strength, a normal gait, normal posture, and no difficulties standing and walking." (Tr. 44). This same evidence, namely that Claimant had no difficulty walking, supports ALJ Shoenholz's rejection of Dr. Katsaros' limitation that Claimant could only walk 5 minutes on a flat surface unpersuasive.

Moreover, ALJ Shoenholz's implicit rejection of Dr. Katsaros' opinion that Claimant should be able to walk five minutes on a flat surface and corresponding RFC determination that Claimant could stand and/or walk for six hours in a workday is supported by substantial evidence in the record. Claimant's record reflects, and ALJ Shoenholz's decision discussed, how although some orthopedic impairment exists in her right knee and lumbar spine, she has not sustained primary care or specialized treatment for knee pain and back pain from 2021-2023. (Tr. 42-44). Between July 2022 and August 2023, Claimant was working as a housekeeper at a hotel, and although she stopped working there due to excessive breaks from shortness of breath, no records demonstrate a recent worsening of symptoms, including her ability to walk. Even without

14

specifically discussing Dr. Katsaros' walking restriction, ALJ Shoenholz provided sufficient explanation to support his finding and permit meaningful review.

Within this argument, Claimant relatedly challenges that ALJ Shoenholz presented a legally insufficient hypothetical to the Vocational Expert by not including the walking limitation from Dr. Katsaros' opinion. (DN 13, at PageID # 598-99). This argument merely rehashes Claimant's earlier argument that ALJ Shoenholz erred by not including Dr. Katsaros' walking limitation in the RFC. But for the reasons discussed above, Claimant's challenges to the RFC fail and, therefore, her challenge regarding the hypothetical presented to the VE fails as well.

### IV. Order

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:       Counsel of Record